# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-02185-CNS-SBP

JOHN AND JANE DOE,

    Plaintiffs,

v.

PHILIP WEISER, in his official capacity as Attorney General of the State of Colorado;
SUSANA CÓRDOVA, in her official capacity as Commissioner of the Colorado Department of Education; and
SCHOOL DISTRICT 27J a/k/a 27J SCHOOLS, in its official and personal capacities,

    Defendants.

---

### PLAINTIFFS' OPPOSITION TO THE COMMISSIONER OF THE COLORADO DEPARTMENT OF EDUCATION'S MOTION FOR EXPEDITED DISCOVERY

---

Plaintiffs John and Jane Doe hereby file this Opposition to the Motion for Expedited Discovery filed by the Commissioner of the Colorado Department of Education. For the reasons set forth below, the Court should deny the Motion.

## **INTRODUCTION**

The Does have moved for a preliminary injunction seeking to stop Defendants' enforcement of The Name Change Law, Colo. Rev. Stat. Ann. § 22-1-145(2) *et seq.*, and School District 27J's Parental Exclusion Policy against their children during the pendency of this litigation. That motion is fully briefed and ripe for decision.

The Commissioner argues she is entitled to expedited discovery to help her oppose the Does' preliminary injunction motion, but she has not satisfied her burden of demonstrating good cause exists for such discovery. While courts sometimes allow *plaintiffs* to take expedited discovery to support a preliminary injunction motion, they rarely allow *defendants* to take expedited discovery to oppose such a motion. The reason for this is obvious: plaintiffs bear the burden of demonstrating entitlement to a preliminary injunction, and allowing defendants to conduct expedited discovery delays the proceedings and ignores the plaintiff's irreparable injury. Accordingly, preliminary injunction defendants only rarely can establish the unusual circumstances necessary to justify expedited discovery.

The Commissioner has not made such a showing here. The Commissioner argues she is entitled to expedited discovery of five-years-worth of A.D.'s psychological treatment records to help her defeat the Does' showing of standing. But because the Does are suffering ongoing injury, they have standing regardless of what A.D.'s treatment records say. Moreover, because the Does are suffering future injury with respect to B.D., A.D.'s

1

treatment records are not germane to the question of standing, again, regardless of what they say. Further, because the evidence establishes A.D. is likely to continue to struggle with her gender identity, the Does have also made a prima facie case of future injury as to A.D. The Commissioner is not entitled to expedited discovery simply because she believes A.D.'s treatment records will help her rebut that case. In any event, the Commissioner's request for five years of A.D.'s treatment records is overbroad, and even A.D.'s more recent records are not likely to contain useful information. Finally, the Does do not have possession of A.D.'s treatment records, and requiring them to obtain these records would be unduly prejudicial both to them and to A.D.

The same is true with respect to the Commissioner's request to depose the Does' expert, Dr. Erica Anderson. Dr. Anderson's testimony is only relevant to one of the Does three substantive theories—that social transitioning is a form of psychological treatment—and even as to that theory, Dr. Anderson's opinion is not controversial. Indeed, the Tenth Circuit has already concluded social transitioning is a form of psychological treatment, and other experts and medical associations hold the same view. Moreover, the Commissioner introduced an "example" expert affidavit in support of her Opposition to the Does' Motion for Preliminary Injunction. While that affidavit does not rebut the Does' prima facie case on the merits, the fact the Commissioner was able to offer it defeats her assertion good cause exists to take Dr. Anderson's deposition at this time, particularly considering the delays such a deposition would cause.

For these reasons, which are set forth in more detail below, the Court should deny the Commissioner's Motion for Expedited Discovery and rule on the Does' preliminary injunction motion without delay.

**PROCEDURAL HISTORY**

On August 7, 2024, the Does filed their Complaint. ECF 1. On that same day, the Does filed their Motion for Preliminary Injunction. ECF 2. By that Motion, the Does sought the narrow relief of a preliminary injunction against Defendants' enforcement of the Name Change Law and the Parental Exclusion Policy against their children during the pendency of this litigation.

On August 27, 2024, Defendants each filed Oppositions to the Motion. As relevant here, the Commissioner argued the Does lacked Article III standing because they had not demonstrated the Name Change Law would likely be applied to their children in the future. Comm'r Opp'n to Mot. Prelim. Injunc. (ECF 27) at 9–11. In addition, in response to the Does' argument that socially transitioning children is a form of psychological treatment, the Commissioner submitted an expert affidavit as an "example" of the testimony she would offer. *Id.* at 14 n.7 and App'x C. The Commissioner did not ask for additional time to hire an expert.

On September 3, 2024, the Does filed their Reply in Support of their Motion for Preliminary Injunction. As relevant here, the Does' Reply explained they had made a sufficient showing of standing at this stage in the proceedings because they were suffering both ongoing injury and the threat of future injury. Pls.' Reply Supp. Mot. Prelim. Injunc. (ECF 34) at 5–12. In addition, the Does explained the Commissioner's example expert's testimony was not reliable and did not rebut—and in fact supported—the Does' position that social transitioning is psychological treatment. *Id.* at 14–16.

On September 10, 2024, the Commissioner filed her Motion for Expedited Discovery. The other Defendants did not join that Motion.

3

## ARGUMENT

Parties generally may not engage in discovery until after the Rule 26(f) conference. *See* Fed. R. Civ. P. 26(d)(1). When a party seeks discovery before that time, it "has the burden of showing good cause for the requested departure from usual discovery procedures." *Colo. Mont. Wyom. State Area Conf. of the NAACP v. U.S. Election Integrity Plan*, No. 22-cv-00581-PAB, 2022 WL 1443057, at *1 (D. Colo. May 6, 2022) ("*NAACP*"). "Good cause for early discovery exists where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Archer v. Alms*, No. 20-CV-01247-KLM, 2020 WL 13906297, at *1 (D. Colo. Dec. 14, 2020) (cleaned up); *see also Arista Recs. LLC v. Does 1-20*, No. 05-CV-2144-WDM-PAC, 2005 WL 3776346, at *1 (D. Colo. Nov. 7, 2005). This standard is met "only in unusual circumstances," *Avaya, Inc. v. Acumen Telecom Corp.*, 2011 WL 9293, at *2 (D. Colo. Jan. 3, 2011) (cleaned up), such as cases involving allegations of unfair competition where evidence might otherwise be lost, *Pod-Ners, LLC v. N. Feed & Bean of Lucerne Ltd. Liab. Co.*, 204 F.R.D. 675 (D. Colo. 2002) (concluding expedited discovery was necessary to allow inspection of commodity that was likely to be sold).

"A pending preliminary injunction motion or hearing is not sufficient to warrant expedited discovery." *NAACP*, 2022 WL 1443057, at *1 (cleaned up). And although courts sometimes authorize expedited discovery to allow *plaintiffs* to *support* a preliminary injunction motion, *Pod-Ners*, 204 F.R.D. at 675, expedited discovery is rarely authorized to allow *defendants* to *oppose* a request for preliminary relief. *See O'Mara v. Cmty. Mental Health of Washtenaw Cnty.*, No. 21-12278, 2022 WL 1194071, at *3 (W.D. Mich. Apr. 21, 2022) ("Generally, expedited discovery is necessary to *prosecute* a motion for injunctive

4

relief, not *defend* it." (emphases added)). Indeed, the Commissioner does not cite a single case where a defendant demonstrated the existence of good cause in connection with the plaintiff's motion for preliminary injunction. The reason for this asymmetry is obvious: a defendant does not need discovery on a preliminary injunction motion because the plaintiff "bear[s] the burden of proof." *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (cleaned up).

Moreover, granting defendants expedited discovery to oppose a preliminary injunction motion is disfavored because such a motion "is not a trial on the merits." *CFPB v. Barnes*, No. 23-2151-DDC-TJJ, 2023 WL 7407576, *12 (D. Kans. 2023). Instead, the "purpose of a [preliminary injunction] is to give temporary relief based on a *preliminary estimate* of the plaintiff's suit, prior to the resolution . . . of the factual disputes and difficulties presented by the case." *Coal. of Concerned Citizens to Make Art Smart v. Fed. Transit Admin.*, 843 F.3d 886, 901 (10th Cir. 2016) (quoting 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2948 (3d. ed. 2013)) (emphasis added). For this reason, the plaintiff is required only to make a "prima facie case" of success on the abbreviated set of facts before the court, not to demonstrate "a certainty of winning" based on a complete record. *Id.* (quoting Wright & Miller § 2948). And because the plaintiff on a motion for preliminary injunction contends he is subject to "irreparable injury" in the absence of the injunction, *Beltronics*, 562 F.3d at 1070, allowing defendants to conduct expedited discovery improperly "ignores the time-sensitive nature of [the plaintiff's] request." *Bill Salter Advertising, Inc. v. City of Brewton*, 486 F. Supp. 2d 1314, 1322 (S.D. Ala. 2007); *see also Thornburgh v. Am. Coll. of Obstetricians & Gynecologists*,

5

476 U.S. 747, 755 (1986) (noting that courts should provide "expeditious resolution" of preliminary injunction motions).

Applying these standards here, the Court should deny the Commissioner's request for expedited discovery.

## I. THE COURT SHOULD NOT REQUIRE THE DOES TO PRODUCE A.D.'S TREATMENT RECORDS AT THIS STAGE IN THE LITIGATION

The Commissioner contends the Court should order the Does to produce A.D.'s treatment records beginning with her 6th grade year. According to the Commissioner, these records are necessary to allow her to test the Does' assertions of future injury for Article III standing purposes. This argument fails for five reasons.

***First,*** just as the Commissioner did in her Opposition to the Does' Motion for Preliminary Injunction, the Commissioner simply ignores the *ongoing injury* the Name Change Law and Parental Exclusion Policy are causing the Does. As the Does explained in their Reply, they are currently suffering injury in the following ways:

- If the Does were to ask the District whether their children are being socially transitioned at school, the District would not tell them the truth. Pls.' Reply Supp. Mot. Prelim. Injunc. at 6–7. This alone constitutes ongoing injury. *Id.*

- The Name Change Law and Parental Exclusion Policy create a decisional framework that authorizes their children to go by a new name associated with a male identity at school without their consent. *Id.* at 8. This decisional framework violates the Does' parental rights, thus creating ongoing injury, even if their children never seek to be socially transitioned in the future. *Id.*

- The Name Chance Law and Parental Exclusion Policy have required the Does to alter their relationships with their children, including speaking with their children about issues they otherwise would not discuss, self-censoring their speech, and monitoring their children's activities more closely than they otherwise would. *Id.* at 9. This injury is occurring regardless of whether the Does children ever seek to be socially transitioned in the future. *Id.*

On its own, this ongoing injury is sufficient to establish a prima facie case that the Does have Article III standing. Thus, A.D.'s treatment records—which relate only to her *future injury*—are irrelevant at this stage in the proceedings.

**Second,** the Does have also made a prima facie case of future injury as to B.D. *Id.* at 10. The Commissioner, however, only seeks A.D.'s treatment records. Because those treatment records will not reveal any information about B.D., have no bearing on the question of the Does' future injury.

**Third,** even if the Does had not made a prima facie case of future injury as to B.D. (and they have), they have made a prima facie case of future injury as to A.D. In this context, the Does can establish future injury by showing A.D. is likely to continue to struggle with feelings of transgender identification. *Id.* at 9–10. The facts the Does have marshalled on this point are simply overwhelming:

- In youth, coming to have a gender identity can be a process, and A.D. only recently began feeling like a girl again after approximately five years. Compl. ¶ 135. While A.D. currently feels like a girl, there is a part of her that does not yet feel comfortable in a female body, and she is still trying to understand those feelings and get back to her prior self. Declaration of A.D. dated Sept. 5, 2024 ("A.D. Decl.") (ECF 34-2) ¶ 12.

- Over the five years A.D. identified as a boy, she has gone through other periods—like this one—where she has not felt a transgender identification, yet the transgender identification returned. Compl. ¶ 135.

- A.D. is still suffering from the underlying conditions that likely triggered her transgender identification in the first place, a fact that makes the reappearance of her transgender identity more likely. *Id.* ¶ 136.

- Socially transitioning youth makes it likely that the young person's transgender identification will persist, Declaration of Dr. Erica Anderson dated August 2, 2024 ("Anderson Decl.") (ECF 2-2) ¶¶ 37–42, and A.D. was socially transitioned at school for two school years, a fact that makes it likely her transgender identity will persist, Compl. ¶ 137. Indeed, A.D.'s transgender identity was perpetuated by her social transition. *Id.* ¶ 127; *see also* A.D. Decl. ¶ 12.

7

- The social pressures on A.D. to re-identify as a boy are high. Compl. ¶ 138. A.D.'s friend group includes many children who identify as LGBTQ+, and District personnel at A.D.'s school are supportive of students with a LGBTQ+ identification. *Id.* ¶¶ 139–40.

The Does are prepared to stand on these facts, and the Commissioner does not need any additional facts to argue the Does have not made a prima facie case. *See* Comm'r Opp'n to Mot. for Prelim. Injunc. at 9–11 (arguing Article III standing is lacking based on absence of future injury). The Commissioner's argument that she is entitled to A.D.'s treatment records assumes a defendant is entitled to expedited discovery any time it disputes the plaintiff's prima facie case on preliminary injunction request. But that is not the law. Expedited discovery is reserved for "unusual circumstances," *Avaya*, 2011 WL 9293, at *2, not run-of-the-mill motions for preliminary injunctions in which the defendant disputes the plaintiff's prima facie showing, which happens in almost every case.

**Fourth,** the Commissioner has made no showing A.D.'s treatment records are even likely to contain information relevant to the question of whether A.D. is likely to continue to struggle with her gender identity in the future. The Commissioner seeks A.D.'s treatment records going back to her 6th grade year, which was approximately five years ago. While these treatment records will likely be discoverable at the merits phase of this litigation, they are unlikely to contain any useful information regarding A.D.'s *current* mental state, which is all that matters for purposes of assessing whether the Does have future injury as to A.D. Accordingly, the Commissioner's request is overbroad. *See Int'l Precision Prod., B.V. v. Staco Sys., Inc.*, No. SACV1301831SJOEX, 2013 WL 12121547, at *2 (C.D. Cal. Dec. 18, 2013) (denying request for expedited discovery that sought information "spanning five years" where movant "provided no evidence or specific reasons to support such a need"); *see also Avaya*, 2011 WL 9293, at * 2 (holding

8

expedited discovery inappropriate when not "narrowly tailored to seek [necessary] information"). And even if A.D.'s treatment records since approximately March 2024—when she began feeling like a girl again—are more likely to contain scattered tidbits of potentially relevant information, the meaning of those scattered tidbits will likely be undecipherable without additional testimony from A.D. putting those tidbits in the context of her current overall psychological state. And considering the Does have already made a prima facie case of A.D.'s future injury, proceeding in such a way that will require A.D. to offer this additional testimony regarding her current mental state does not advance the ends of justice and will cause needless delay.

**Fifth,** the Does do not have possession of A.D.'s treatment records going back to her 6th grade year from each of her approximately six private mental health providers during that time. And while the Does and A.D. may be able to obtain these records by asking each of those providers for them, it is not clear how long that process will take. Moreover, the Does and A.D. do not wish to have any further contact with the I-Matter Therapist who counseled A.D. regarding testosterone injections and breast removal. Compl. ¶ 104.[1] Requiring the Does and A.D. to attempt to gather these records in advance of the Court's ruling on the Motion for Preliminary Injunction would be prejudicial to them, particularly considering this task "could be conducted more effectively" through third-party subpoenas in the normal course of discovery. *Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 08-cv-1166-IEG, 2008 WL 3992353, *2 (S.D. Cal. Aug. 28, 2008).

---

[1] Under Colorado law, children twelve years old and older have the right to consent to mental health services, Colo. Rev. Stat. § 12-245-203.5, which gives them the right of control over their treatment records. Accordingly, to obtain A.D.'s treatment records from the I-Matter Therapist, A.D. would likely be required to communicate with the Therapist, a communication neither the Does nor A.D. want A.D. to have.

The Commissioner argues she "satisfies the standards for expedited discovery" set forth in the case law, Comm'r Mot. at 6, but the factors she invokes come from cases where a *plaintiff* sought expedited discovery to support its request for a preliminary injunction. *See, e.g.*, *NAACP*, 2022 WL 1443057, at *2. Those factors, which include evaluation of "whether a preliminary injunction is pending" and "the burden on the *defendants* to comply with the request," *id.*, at *2 (emphasis added), are not applicable when, as here, the *defendant* seeks expedited discovery.[2]

Even if these factors were applicable, the Commissioner does not satisfy them. First, the purpose of evaluating "whether a preliminary injunction is pending" is to ensure "some showing of irreparable harm" is made by the party seeking expedited discovery. *Exari Sys. Inc v. Amazon Corp. LLC*, No. C15-356 MJP, 2015 WL 12025325, at *2 (W.D. Wash. May 4, 2015). When a preliminary injunction plaintiff requests expedited discovery, a court can look to the irreparable harm cited in support of the plaintiff's motion. *Id.* Here, however, because the Commissioner did not move for a preliminary injunction, she has made no showing of irreparable harm, which would be a tall task given the Does only seek a preliminary injunction with respect to their own children. Accordingly, the Commissioner's request for expedited discovery fails at the first factor.

Second, the Commissioner's request for expedited discovery comes very early in the case, almost a month before her responsive pleading is due. Third, given the strength of the Does' prima facie showing of Article III standing and the fact that A.D.'s treatment

---

[2] The full list of factors applicable when a plaintiff seeks expedited discovery are: "(1) whether a preliminary injunction is pending; (2) how far in advance of the typical discovery process the request was made; (3) the purpose for requesting the expedited discovery; (4) the breadth of the discovery requests; [and] (5) the burden on the defendants to comply with the requests." *NAACP*, 2022 WL 1443057, at *2.

records are not likely to contain any useful information, the purpose of the Commissioner's request is to undertake a fishing expedition. Fourth, the Commissioner's requests are overly broad. And fifth, the Commissioner's requests will unduly prejudice the Does and A.D., both by requiring the Does and A.D. to interact with the I-Matter Therapist and by unduly delaying the proceedings.

Finally, the duplicity of the Commissioner's position should not be lost on the Court. Under the Name Change Law, *every child* who asks to be socially transitioned must be, irrespective of what their treatment records say. Yet when parents seek to preliminarily enjoin the Law as applied to their children, the Commissioner insists on pre-discovery production of the child's treatment records, despite the facts, here, it is undisputed that the child has previously been socially transitioned at school and the parents have produced evidence establishing the child has ongoing struggles with her gender identity. There is no good cause for allowing this fishing expedition at the preliminary injunction stage, particularly considering the prejudice it is likely to cause.[3]

## II. THE COURT SHOULD NOT REQUIRE DR. ANDERSON TO SUBMIT TO A DEPOSITION AT THIS STAGE IN THE LITIGATION

The Commissioner also seeks to depose Dr. Anderson, arguing she needs such a deposition to probe Dr. Anderson's testimony that social transitioning is a form of psychological treatment. This argument fails for four reasons.

---

[3] The Commissioner contends the Rule 26(f) conference is likely to take place before her Motion for Expedited Discovery is resolved. Comm'r Mot. at 3 n.1. But the Magistrate Judge has not yet "convene[d] a scheduling conference" pursuant to this Court's Order of Reference dated August 8, 2024. ECF 8. Accordingly, the deadline for the Rule 26(f) conference has not even been set under LCivR 16.1. Moreover, considering Defendants have raised arguments in opposition to the Does' Motion for Preliminary Injunction that, if accepted, would foretell dismissal of this case, conducting the Rule 26(f) conference and proceeding to merits discovery before the Court resolves that Motion would be premature.

***First,*** Dr. Anderson's testimony is only pertinent to *one* of the Does' three substantive theories. Specifically, the Court does not need to rely on Dr. Anderson's testimony to conclude (1) socially transitioning children at school is an important decision in the life of the child or (2) doing so interferes with parents' right to family integrity. Pls.' Mem. Supp. Mot. Prelim. Injunc. at 14–16. Nor does the Court need to rely on Dr. Anderson's testimony to conclude the Name Change Law and Parental Exclusion Policy violate parents' procedural due process rights. *Id.* at 22–23. Because Dr. Anderson's testimony is not necessary for the Does to prevail, the Commissioner cannot demonstrate good cause to take her deposition at this stage in the proceedings.

***Second,*** as for the Does' third substantive theory—that social transitioning is a form of psychological treatment to which parents have the right to consent—the Commissioner has also failed to demonstrate good cause. As the Does explained in their preliminary injunction briefing, *id.* at 12–14, outside of a handful of district court opinions that are currently on appeal, the conclusion that social transitioning is a form of psychological treatment is not remotely controversial:

- The Tenth Circuit has concluded social transitioning is a form of psychological treatment. *Lamb v. Norwood*, 899 F.3d 1159, 1161 (10th Cir. 2018) (noting "[t]reatment forms [for gender dysphoria] currently include . . . [c]hanges in gender expression and role (which may involve living . . . in another gender role, consistent with one's gender identity)"); *see also Fowler v. Stitt*, 104 F.4th 770, 776 (10th Cir. 2024) (similar). Other courts around the country agree.[4]

---

[4] *See, e.g.*, *Kadel v. Folwell*, 100 F.4th 122, 136–37 (4th Cir. 2024) ("To treat gender dysphoria, the WPATH Standards recommend . . . social transition . . . ."); *Edmo v. Corizon, Inc.*, 935 F.3d 757, 770 (9th Cir. 2019) (noting that "[t]reatment options for individuals with gender dysphoria" include "living . . . in another gender role, consistent with one's gender identity"); *Tirrell v. Edelblut*, No. 24-CV-251-LM-TSM, 2024 WL 4132435, at *2 (D.N.H. Sept. 10, 2024) (noting that "treatment for gender dysphoria generally involves . . . a social transition"); *Clark v. Quiros*, No. 3:19-CV-575 (VAB), 2024 WL 3552472, at *6 (D. Conn. July 26, 2024) (noting that "treatment for gender dysphoria [includes] social transition"); *Koe v. Noggle*, No. 1:23-CV-2904-SEG, 2023 WL 5339281,

- Other experts have concluded social transitioning is a form of psychological treatment. *See* Zucker, Ken J., *The myth of persistence: Response to "A Critical Commentary on Follow-Up Studies and Desistance Theories about Transgender and Gender Non-Conforming Children" by Temple Newhook et al.*, 19 International Journal of Transgenderism (ECF 1–2) at 237 (noting that "a gender social transition [is a form of] psychosocial treatment that will increase the odds of long-term persistence").

- Major medical associations—including but not limited to the American Medical Association, the American Academy of Pediatrics, and the Endocrine Society— have concluded social transitioning is a form of psychological treatment. Br. of Amici Curiae Medical, Nursing, Mental Health, and other Health Care Organizations in Support of Appellee in *Adams v. Sch. Bd. of St. Johns Cnty.*, Case No. 18-13592 (ECF 1–3) at 17 (noting that one "treatment" for gender dysphoria "is to assist the patient to live in accordance with his or her gender identity, . . . . [through] . . . social transition").

- The United States Department of Health and Human Services has concluded social transitioning is a form of psychological treatment. *See Nondiscrimination in Health Programs and Activities*, Proposed Rule, 87 FR 47,824-01, *47,867 (August 4, 2022) (observing social transitioning can be the "clinically indicated next step for [a gender non-conforming] child").

- And the most comprehensive evidence review of so-called "gender affirming care" to date recently concluded that social transitioning is such a significant form of treatment in the lives of children that their "parents should be actively involved in decision making [regarding their child's social transition] unless there are strong grounds to believe that this may put the child or young person at risk." *The Cass Review*: *Independent review of gender identity services for children and young people*, Dr. Hilary Cass, United Kingdom National Health Service (April 10, 2024) (ECF 1-1) at 168.

---

at *6 (N.D. Ga. Aug. 20, 2023) (noting that "gender dysphoria treatment plans include . . . a social transition"); *Doe v. Horne*, No. CV-23-00185-TUC-JGZ, 2023 WL 4661831, at *3 (D. Ariz. July 20, 2023) ("Undergoing treatment to alleviate gender dysphoria . . . includes . . . social transition . . ."); *Monroe v. Meeks*, 584 F. Supp. 3d 643, 678 (S.D. Ill. 2022) (holding that "[s]ocial transition . . . is a medically necessary component of treatment for some . . . with gender dysphoria"); *Pinson v. Hadaway*, No. 18-CV-3420-NEB-KMM, 2020 WL 6121357, at *1 (D. Minn. July 13, 2020) (noting that "[g]ender dysphoria treatment can involve . . . social transition"); *Porter v. Allbaugh*, No. 18-CV-0472-JED-FHM, 2019 WL 2167415, at *2 n.3 (N.D. Okla. May 17, 2019) (noting that "[c]urrent treatments for gender dysphoria include . . . social transition").

13

Accordingly, even putting Dr. Anderson's testimony to the side, these sources easily establish a prima facie case that social transitioning is a form of psychological treatment and that schools must obtain parents' consent before undertaking it on their children.

**Third,** in the Commissioner's Opposition to the Does' Motion for Preliminary Injunction, she submitted the affidavit of Dr. Scott Leibowitz to rebut Dr. Anderson's testimony. While Dr. Leibowitz's affidavit confirms Dr. Anderson's conclusions, *see* Pls.' Reply Supp. Mot. Prelim. Injunc. at 14–16, the fact the Commissioner has been able to gather and offer evidence in opposition to Dr. Anderson's testimony undermines her claim that taking Dr. Anderson's deposition is necessary now. *Hansen Beverage*, 2008 WL 3992353, at *2 (denying defendant's motion for expedited deposition of plaintiff's expert where defendant presented rebuttal evidence found on internet); *Bill Salter Advert.*, 486 F. Supp. 2d at 1322 (denying defendant's motion for expedited discovery where "nothing in [defendant's preliminary injunction] opposition brief would support a conclusion that [defendant] is unable reasonably to defend" against the preliminary injunction motion). Indeed, the Commissioner felt so confident in Dr. Leibotwiz's affidavit she did not ask the Court for additional time to secure her own expert in connection with the Does' Motion.

**Fourth**, at bottom, the Commissioner's request to depose Dr. Anderson is based solely on the fact that the Does rely on Dr. Anderson's testimony to establish their prima facie case on one of their claims. But a similar argument will be available to defendants in almost *every* preliminary injunction motion. Again, however, expedited discovery is reserved for "unusual circumstances," *Avaya*, 2011 WL 9293, at *2, and the Court must be mindful of the significant delays that expert depositions can cause. "The whole point

14

of the [preliminary injunction] remedy is that, in certain narrow contexts, justice delayed truly is justice denied." *Bill Salter Advert.*, 486 F. Supp. 2d at 1322.

The Commissioner also argues her request to depose Dr. Anderson satisfies the five *NAACP* factors. But as discussed, those factors do not apply where a defendant seeks expedited discovery to defend against the plaintiff's preliminary injunction motion. In any event, the Commissioner does not satisfy those factors. First, the Commissioner made no effort to demonstrate irreparable harm. Second, her request for expedited discovery comes very early in the case. Third, given the strength of the Does' prima facie case on the merits, any deposition of Dr. Anderson would be of limited usefulness. Fourth, allowing a defendant to take an open-ended deposition of the plaintiff's expert is overly broad. And fifth, the delays inherent in an expert deposition will unduly prejudice the Does.

Finally, because Defendants have not raised a genuine dispute of material fact, "[a]n evidentiary hearing is not required" on the Does' Motion. *Willey v. Sweetwater Cnty. Sch. Dist. No. 1 Bd. of Trustees*, 680 F. Supp. 3d 1250, 1268 (D. Wyo. 2023). Instead, the Court may—and should—award the Does the narrow preliminary relief they seek without holding an evidentiary hearing. But if the Court believes such a hearing is necessary, the Does will be happy to make Dr. Anderson available at that hearing. And if the Commissioner wants, and the Court allows, the Commissioner may cross examine Dr. Anderson there. But the Commissioner has not demonstrated good cause sufficient to allow her to take Dr. Anderson's deposition before that time.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the Commissioner's Motion for Expedited Discovery.

Respectfully submitted,

Dated: September 18, 2024.

by:

*/s/Josh W. Dixon*
Harmeet K. Dhillon*
Josh W. Dixon
Eric A. Sell
Center for American Liberty
1311 S. Main Street, Suite 207
Mount Airy, MD 21771
(703) 687-6212
harmeet@libertycenter.org
jdixon@libertycenter.org
esell@libertycenter.org

Scott Gessler
Gessler Blue Law
7350 E. Progress Place, Suite 100
Greenwood Village, CO 80111
(720) 839-6637
sgessler@gesslerblue.com

Attorneys for Plaintiffs
*Motion for admission forthcoming

**CERTIFICATE OF SERVICE**

I hereby certify that on September 18, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Eliott Vallen Hood
ehood@celaw.com
Mary Gwyneth Whalen
gwhalen@celaw.com
Attorneys for School District 27J

Michelle Berge
First Assistant Attorney General
michelle.berge@coag.gov
Joseph A. Peters
Senior Assistant Attorney General
joe.peters@coag.gov
Attorneys for Susana Córdova

LeeAnn Morrill
First Assistant Attorney General
leeann.morrill@coag.gov
Attorney for Philip Weiser

*s/Travis Yokoyama*
Travis Yokoyama, Paralegal