IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-02185-CNS-SBP

JOHN AND JANE DOE,

Plaintiffs,

v.

PHILIP WEISER, in his official capacity as Attorney General of the State of Colorado; SUSANA CÓRDOVA, in her official capacity as Commissioner of the Colorado Department of Education; and SCHOOL DISTRICT 27J a/k/a 27J SCHOOLS, in its official and personal capacities,

Defendants.

## THE COMMISSIONER OF EDUCATION'S REPLY IN SUPPORT OF MOTION FOR LIMITED EXPEDITED DISCOVERY TAILORED TO PRELIMINARY INJUNCTION HEARING

The Commissioner of Education has moved for expedited discovery under Rule 26(d), requiring Plaintiffs to honor: (1) one request to produce certain documents at least 14 days prior to any preliminary injunction hearing; and (2) one request to produce a witness for deposition in sufficient time that the deposition transcripts will also be available at least 14 days prior to any such hearing.

Regular, non-expedited discovery should have started already. In the absence of a court order setting the scheduling conference, the default deadlines in FRCP 16 and 26 apply. Under those deadlines, the Rule 16(b) scheduling order is due October 8th, and the Rule 26(f) conference was thus due September 17th—at which point discovery should have commenced. Despite the plain text of these rules, Plaintiffs have declined to proceed with a Rule 26(f) conference and initial disclosures. They contend that all discovery is premature. ECF 42, p. 14 n.3.

1

Plaintiffs should not be permitted to stall and bar all discovery. The importance of developing a record in these types of cases cannot be understated. Across the country, multiple cases on the use of chosen names and pronouns are on appeal without the benefit of key facts. Yet discovery in federal court does not wait for the pleadings to close—and neither Plaintiffs nor any Defendants have moved to stay discovery. The Commissioner may or may not support such a motion, should any party wish to pursue one. But until that happens, the "merits phase" of this litigation is right now. More to the point, nothing about the Commissioner's request for expedited discovery would delay a preliminary injunction hearing in any way—not by a single day—because Plaintiffs have neither requested a forthwith hearing nor demanded that one occur within the next two or three weeks.

The Commissioner seeks very limited discovery, directly tailored to Plaintiffs' arguments for preliminary relief, to be produced two weeks before any hearing on the motion for such relief. The Commissioner has *not* asked that any such hearing be postponed to allow the discovery. If the Court resolves Plaintiffs' motion without a hearing, the Commissioner's motion will be moot. And if the Court instead sets a hearing (as the Commissioner has requested), the discovery will not add any delay beyond that already caused by Plaintiffs' own tactical decisions.

The Commissioner has established good cause for limited, expedited discovery. In turn, Plaintiffs have identified no credible burden from these discovery requests— while also working to prevent all discovery whatsoever. The Court should grant the motion.

### Legal Standard

Courts may, in the exercise of their broad discretion, alter the timing, sequence, and volume of discovery. FRCP 26(d)(1). A party seeking expedited discovery has the burden of showing good cause for departing from usual discovery procedures. *Pod–Ners, LLC v. Northern Feed & Bean of Lucerne, Ltd. Liab. Co.*, 204 F.R.D. 675, 676 (D. Colo. 2002); *Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003). Good cause is often tied to a preliminary injunction hearing, based on the weight of factors like the purpose of the discovery and the breadth and burden of the requests. *Colo. Mont. Wyo. State Area Conf. of the NAACP v. U.S. Election Integrity Plan*, 2022 WL 1443057, at *1-2 (D. Colo. May 6, 2022; *see* ECF 37, pp. 3-4 (stating legal standard in fuller detail).

Plaintiffs suggest that the "good cause" standard is asymmetrical, imposing a heavier burden on defendants than on plaintiffs. ECF 42, pp. 4-5. In doing so, Plaintiffs cite a single unpublished court order from outside this District—a court order that itself cited no authority suggesting any such thing. *See O'Mara v. Cmty. Mental Health of Washtenaw Cnty.*, 2022 WL 1194071, at *3 (E.D. Mich. Apr. 21, 2022) (citing three cases, none of which dealt with a defendant's request).[1] But this District's cases draw no distinction based on which side of the caption the moving party is on. *E.g.*, *Smith v. Colorado*, 2020 WL 7043866 (D. Colo. Dec. 1, 2020) (granting defendant's motion); *Smith v. Colorado*, 2020 WL 7074850 (D. Colo. Dec. 3, 2020) (in same case, granting in

---

[1] Plaintiffs also quote from *CFPB v. Barnes*, 2023 WL 7407576, *12 (D. Kans. 2023), while arguing that "granting defendants expedited discovery to oppose a preliminary injunction motion is disfavored." ECF 42, p. 5. But *CFPB* did not address a motion for expedited discovery, nor a preliminary injunction motion, nor any other legal question relevant here.

3

part plaintiff's motion). Nor do cases elsewhere in the country. *E.g.*, *United States v. Abbott*, 2023 WL 6532633, at *2-3 (W.D. Tex. Aug. 3, 2023) (granting in part expedited discovery to defend preliminary injunction, applying the same factors that apply to a plaintiff's motion); *Wurth Elecs. ICS, Inc. v. Elemary*, 2023 WL 3159738, at *2-3 (S.D. Ohio Apr. 18, 2023) (same); *Walsh v. Packers Sanitation Servs., Inc., Ltd.*, 2022 WL 17094473, at *2 (D. Neb. Nov. 21, 2022) (same); *IOMAXIS, LLC v. Hurysh*, 2022 WL 180734, at *4 (D. Md. Jan. 20, 2022) (same); *Grayeyes v. Cox*, 2018 WL 3421340, at *3 (D. Utah July 13, 2018) (same). Plaintiffs are mistaken in arguing that defendants' motions are uniquely disfavored.

## **Argument**

### I. Treatment Records

Plaintiffs rely on three basic theories of imminent harm. ECF 2-1, pp. 23-24. They assert an ongoing legal injury based on the mere existence of the statute; an imminent injury based on A.D.'s mental health history; and an imminent injury based on the undisputed fact that B.D. goes to school. *Id.* The Commissioner has asked for records related to the only one of these theories that is based on factual allegations (even though Plaintiffs still need speculative inferences from those facts to show a credible threat of imminent harm). As explained in the Commissioner's motion, good cause exists for expediting the discovery because (1) the requested records will undoubtedly be produced within the next few months anyway, (2) the records speak to Plaintiffs' core factual theory of imminent injury, and (3) the records are the least burdensome way of discovering information about the truth and falsity of—and proper inferences to be drawn from—Plaintiffs' allegations. ECF 37, pp. 4-6.

4

In response, Plaintiffs argue primarily that A.D.'s medical records have no relevance to their *other* two theories, the theories unrelated to A.D.'s likelihood of changing her gender identity. ECF No. 42, pp. 6-7 ("first" and "second" arguments). The Commissioner agrees: the sought records are relevant to only one of Plaintiffs' theories of imminent harm—the one based on A.D.'s mental health history. If Plaintiffs abandon that theory and rely exclusively on their other theories, the Commissioner would withdraw her request for A.D.'s treatment records. Absent Plaintiffs' abandonment of the theory, however, the Commissioner has a right to test Plaintiffs' factual allegations and has shown good cause to do so with the aid of limited, expedited discovery.

Plaintiffs also argue that they should not need to produce the records because their verified complaint and declarations make a "simply overwhelming" showing of future injury. ECF No. 42, pp. 7-8 ("third" argument). This argument is unmoored from any factor in the Court's expedited-discovery precedent. It also fails because Plaintiffs again rely—even while making the argument—on the very allegations to which this discovery request is directed. *See id.* ("A.D. is still suffering from the underlying conditions that likely triggered her transgender identification in the first place, a fact that makes the reappearance of her transgender identity more likely."). Courts routinely consider the presence or absence of diagnosed gender dysphoria to be relevant to plaintiffs' claims for preliminary relief in cases like this one.[2] Plaintiffs should not be

---

[2] *E.g.*, *Doe v. Delaware Valley Reg'l High Sch. Bd. of Educ.*, 2024 WL 706797, at *11 (D.N.J. Feb. 21, 2024) ("But Plaintiff has not alleged here that Jane has been diagnosed with gender dysphoria."); *Willey v. Sweetwater Cnty. Sch. Dist. No. 1 Bd. of Trustees*, 680 F. Supp. 3d 1250, 1274 (D. Wyo. 2023) ("Absent evidence the Student was suffering or diagnosed with a mental health condition related to gender identity, the Court finds it unlikely the Willeys will succeed on the merits of their Fourteenth Amendment parental right to direct medical care claim."); *Foote v. Town of Ludlow*,

allowed to bring themselves within the reasoning of those decisions based on mere artful pleading and lawyer-crafted declarations. Their allegations should be tested by cross-examination informed by a modicum of discovery.

Next up, Plaintiffs suggest that the Commissioner's request is overbroad because it seeks records going back five years. ECF No. 42, pp. 8-9 ("fourth" argument). But it is Plaintiffs, not the Commissioner, who relied on this medical history *in their claim for preliminary relief*. *See* ECF 2-1, p. 24 (citing ECF 1, ¶¶ 134-40). Again, if Plaintiffs abandon their theory of imminent harm based on A.D.'s "underlying conditions," the Commissioner will withdraw the request. Until then, the Commissioner has asked for only those records speaking directly to Plaintiffs' own arguments.

Finally, Plaintiffs suggest—without providing any estimate—that it would take too long to track down records from six mental health providers (including, evidently, an I-Matter therapist whose records the Commissioner did not request). ECF No. 42, pp. 9-10 ("fifth" argument). But because the presumptive deadline for the parties' Rule 26(f) conference has already come and gone, this is discovery that *should* already be occurring. In fact, Plaintiffs concede as much. *Id.* at 8 ("[T]hese treatment records will likely be discoverable at the merits phase of this litigation[.]"). And the Commissioner has asked only that the records be produced 14 days before the preliminary injunction

---

2022 WL 18356421, at *4-5 (D. Mass. Dec. 14, 2022) ("Gender dysphoria is a recognized mental health disorder, but Plaintiffs have not alleged either child has been diagnosed with gender dysphoria, or even that Defendants erroneously believed the children suffered from gender dysphoria. Plaintiffs have not alleged Defendants' actions were undertaken as part of a treatment plan for gender dysphoria or explained how referring to a person by their preferred name and pronouns, which requires no special training or skill, has clinical significance when there is no treatment plan or diagnosis in place." (internal citation omitted).).

hearing, if any, so that she can properly prepare for such a hearing. If the Court decides not to hold a hearing, the request will be moot—and if the Court *does* set a hearing (as requested by the Commissioner), the request merely asks Plaintiffs to gather and produce this one set of records a bit earlier than they otherwise might.

**II.     Expert Deposition**

Plaintiffs rely extensively on an expert witness report (signed a week before this lawsuit was even filed) to establish their claimed constitutional violations. ECF 1, ¶¶ 20-62; ECF 2-1, pp. 11-12. As Plaintiffs see it—based on this expert's opinion—the State's nondiscrimination law prohibiting the incorrect use of names for transgender and gender-diverse students constitutes a form of compelled healthcare. *See* ECF 2-1, pp. 11, 13. The Commissioner has asked for this expert's deposition prior to any preliminary hearing that may be held. ECF 37, pp. 7-8. And as explained in the Commissioner's motion, good cause exists because (1) the deposition will undoubtedly happen within the next few months anyway, (2) the testimony is so central to Plaintiffs' likelihood of success that it occupies the first five pages of their complaint's merits allegations, and (3) the deposition imposes no added burden on Plaintiffs. *Id.*

In response, Plaintiffs first argue that the Commissioner has no right to test one of their merits theories because they raise other, alternative theories. ECF No. 42, pp. 12 ("first" argument). But it is flatly untrue that Dr. Anderson's testimony is irrelevant to their other claims: Plaintiffs rely on Dr. Anderson to establish both the liberty interest at issue in their procedural due process claim, ECF 1, ¶ 175 ("The Does have a liberty interest in . . . consenting and receiving notice when the government seeks to provide healthcare treatment to their children"), and the alleged invasion of their constitutional

7

right to family integrity, *id.* ¶ 183 ("By authorizing the District to socially transition children . . ."). Plaintiffs' argument thus contradicts their own pleadings. Further, it is Plaintiffs, not the Commissioner, who spent the first five pages of their merits allegations reciting Dr. Anderson's testimony. ECF 1, ¶¶ 20-62. And it is Plaintiffs who focused on that testimony—to the near-exclusion of any other evidence—in their argument for preliminary relief. ECF 2-1, pp. 11-13. Plaintiffs' additional legal theories do nothing to undermine the Commissioner's legitimate interest in defending the factual claims presented by Plaintiffs.

Second, Plaintiffs argue that there's no need to depose their expert because there is other evidence to support their allegations. ECF No. 42, pp. 12-14 ("second" argument). Yet Plaintiffs relied on Dr. Anderson's testimony at length in their motion for preliminary relief. ECF 2-1, pp. 11-12. Plaintiffs can moot the need to test the strength of their star witness by withdrawing that witness's declaration. But until they do so, their citations to inapposite cases and standards provide no basis for shielding the expert's opinions from cross-examination.

Third, Plaintiffs misrepresent the Commissioner's pleadings, arguing that discovery is unnecessary because the Commissioner presented expert rebuttal already. ECF No. 42, pp. 14 ("third" argument). But Commissioner did not endorse the affidavit from Dr. Liebowitz: as the Commissioner's response explicitly said, the affidavit was presented to show the usefulness of an evidentiary hearing on the matter.[3] ECF 27, p. 14 & n.7.

---

[3] Plaintiffs seem to believe that the Commissioner should have asked for more time if she needs it in order to find an expert. ECF No. 42, p. 14. But no hearing has yet been set; there is no deadline for the Commissioner to seek to extend.

8

Finally, Plaintiffs argue that the Commissioner shouldn't have discovery because it might delay preliminary relief. ECF No. 42, pp. 14-15 ("fourth" argument). But the Commissioner has not asked for the Court's resolution of the preliminary injunction to be delayed at all. Indeed, if Plaintiffs had agreed to the deposition when the Commissioner first requested it, the parties might *already* have the transcripts. And in any event, Plaintiffs have not requested a forthwith hearing; any delay occasioned by the Court's determination that a hearing is necessary (if that happens) is a delay of their own making. The Commissioner has asked only for an opportunity to depose Dr. Anderson in sufficient time to have the transcripts available two weeks before the hearing, if one occurs. Given the availability of expedited transcripts—and the fact that preliminary injunction hearings are seldom scheduled on a next-day basis—the requested deposition won't delay the hearing any further than Plaintiffs' own tactical decisions already have.

Plaintiffs conclude by offering to make Dr. Anderson available for the preliminary injunction hearing itself, as long as they don't have to make her available *before* the hearing. ECF No. 42, pp. 15. While that's certainly preferable to no examination at all, a blind cross-examination is no substitute for a deposition. And nowhere in Plaintiffs' response do they explain any burden—*any burden at all*—that might be imposed by taking this deposition a few months earlier than it would otherwise occur. Their offer, though better than nothing, does not defeat the Commissioner's good cause shown for limited, expedited discovery.

## Conclusion

Plaintiffs have requested preliminary relief while declining to disclose the evidence or produce the witnesses supporting their claim to relief. The State should not be enjoined from enforcing its nondiscrimination laws by such trial by ambush. The Court should order Plaintiffs: (1) to produce the treatment providers' records from the treatment described in paragraphs 78-82 and 123 of Plaintiffs' complaint at least 14 days prior to any preliminary injunction hearing; and (2) to make Dr. Erica Anderson available for a deposition in such time that the deposition transcripts will be available at least 14 days prior to any preliminary injunction hearing.

Dated September 20, 2024.

                              FOR THE ATTORNEY GENERAL

                              */s/     Joseph A. Peters*
                              MICHELLE BERGE, Reg. No. 39299
                              First Assistant Attorney General
                              JOSEPH PETERS, Reg. No. 42328
                              Senior Assistant Attorney General
                              1300 Broadway, 6th Floor
                              Denver, CO 80203
                              (720) 508-6000
                              michelle.berge@coag.gov
                              joe.peters@coag.gov
                              *Attorneys for Defendant Córdova*

<u>CERTIFICATE OF SERVICE</u>

    This is to certify that I have served the foregoing **THE COMMISSIONER OF EDUCATION'S REPLY IN SUPPORT OF MOTION FOR LIMITED EXPEDITED DISCOVERY TAILORED TO PRELIMINARY INJUNCTION HEARING** upon all parties using the court's CM/ECF filing system, this 20th day of September, 2024.

                                              */s/ Dave Sluss*